OEHRLE et al. v. WILLIAM H. HORSTMAN CO.

(Circuit Court of Appeals, Third Circuit. May 23, 1905.)

No. 5.

PATENTS—INFRINGEMENT—ORNAMENTAL CORDS.

The Oehrle patent, No. 599,191, for an improvement in ornamental ropes or cords, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 131 Fed. 487.

Wm. C. Strawbridge, for appellants.

Henry N. Paul, Jr., for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. Patent No. 599,191, with which we are concerned upon this appeal, was granted to the appellants, as assignees of Franklin W. Oehrle, upon February 15, 1898, for improvements in ornamental ropes or cords. The specification contains these explanatory statements:

"My invention relates to a class of ornamental ropes or cords formed as to their exteriors of colored silk or other ornamental thread, and largely employed in the construction of portières and in connection with curtains.

"It is the object of my invention to produce an ornamental rope or cord of simple and inexpensive construction, but more ornamental in appearance than such devices as heretofore manufactured."

Disregarding the matter of economy in construction, which is not material in the present case, it thus appears that the object of the patentee was to improve the articles to which his invention related by making them more ornamental in appearance; and as the patent is for the improved cord itself, as an article of manufacture, and not for a method of manufacturing it, attention is to be directed to the characteristic ornamental feature which, in its finished state, it embodies. Fig. 1 of the patent (here reproduced) is a view in side elevation of a piece of ornamental rope or cord which is admitted to be of a well-known construction:

*FIG.1.*

In this figure, as the specification instructs us—

"A B are wires, or twines, formed of hemp or other strong nonyielding material. The strands A B may each of course be composed partly of wire and partly of fibrous material, or one of said strands may be of wire and the other of fibrous material, or both of wire or both of fibrous material, as may be de-

sired, the object being to form a core for the ornamental rope or cord to be produced.

"Ornamental threads which may be of silk, linen, cotton, tinsel, or other material, or a combination of these materials or any of them, are worked up into a 'loop' strand C conveniently by being coiled into the form of a tube of very considerable diameter, the threads being preferably placed so close together as to give said tubular coil a solid appearance or effect.

"To unite said tubular coil to the core, one of the strands A B extends through its hollow interior, as shown in Fgures 1, 2, and 3, so that the wall of said coil is caught and tightly held between said strands A B, with the result that the body of the coil extends laterally away from said strands.

"By reason of the strands A B being twisted upon each other, as shown clearly in Figure 1, the loop strand formed as a tubular coil is caused to assume the form of a continuous spiral, the effect of which is highly ornamental.

"The structure thus formed, however, is less ornamental than it would otherwise be, by reason of the exposure to view of one of the strands A B throughout the length of the rope, and further because said continuous spiral appears as a hollow or coreless spiral or one not formed on a substantial core, and lacks the appearance of strength or durability."

It was to "overcome both these defects" that the patentee devised his improvement, and this he tells us he accomplished—

"By providing an ornamental cord or group of cords or threads or tape D, which I wind about the structure shown in Figure 1, said threads or cords which I term the filling strand, passing spirally about the core of said rope and between the spirals formed or described by the loop strand C, with the result, as shown in Figure 2, that the core is filled out whereby the symmetry and the apparent strength of the completed cord is increased, and the core strands completely concealed."

Fig. 2, referred to in the immediately preceding extract, is the only one of the patent drawings, other than that already copied, which need be inserted in this opinion. It is designated by the patentee as "a view in side elevation of the cord represented in Figure 1, as modified to embody my invention."

· FIG.2.

The claims are:

"(1) As an article of manufacture, an ornamental rope or cord composed of a core, consisting of a plurality of strands twisted together, and a series of loops of ornamental thread, engaged with the strands of the core, and spirally disposed with reference to the same, and an ornamental filling strand wound upon said core in the spiral space or spaces left between the projecting loops, substantially as set forth.

"(2) As an article of manufacture, an ornamental rope or cord, composed of a core consisting of a plurality of strands twisted together, a tubular coil of ornamental threads passing spirally about and bound to said core by the engagement of one of the core strands within its hollow interior, and an ornamental filling strand wound upon said core in the space not occupied by the tubular coil, substantially as set forth."

The court below did not pass upon the validity of the patent in suit, and, as it is unnecessary for us to do so, we will not express any opinion upon that subject. The decree appealed from was based solely upon the finding that the charge of infringement had not been sustained, and that finding only will be considered.

The cord shown in Fig. 1 of the patent being admittedly old, it becomes apparent upon reading either of these claims in connection with that figure, and with Fig. 2, which "embodies the invention," that the utmost extent of Oehrle's contribution to the art was an ornamental filling strand wound upon the core "in the spiral space or spaces left between the projecting loops," or (as per claim 2) "in the space not occupied by the tubular coil." This filling strand, and the effect produced by it, are typically and distinctly shown in Fig. 2. It, no doubt, makes the cord "more ornamental in appearance," and does remedy the particular defects which Oehrle said he proposed to overcome. It prevents "the exposure to view of one of the strands A B," and it increases "the apparent strength of the completed cord." For the purposes of this case, then, let it be conceded that the addition of this filling strand to the pre-existent ornamental ropes involved invention, and that the owners of this patent are entitled to protection against its unlicensed appropriation. But of anything more than this they could not be accorded a monopoly without depriving the public of the unrestricted use of things of general knowledge and of common right.

In the cords of the appellee the filling strand of the patent is not present. They are made after the manner of the prior art; and without giving to these claims a breadth of construction which, in view of that art, is wholly inadmissible, the appellee's structure cannot be held to conflict with them. It is produced by entwining with the rope shown in Fig. 1 another rope, which, except in color, is but a duplicate of the former, so as to form a single rope of two colors. This, too, may be said to enhance the ornamental appearance of the cord; but it does not do so in any way contemplated by Oehrle, nor by his means. The two-color effect produced by the appellee is attained by a mere duplication of the admittedly old structure, and by entwining the parts which result from that duplication in a manner long practiced and well understood. This construction was not claimed by Oehrle, and if it had been his claim could not have been properly allowed. Walker on Patents, § 34, and cases there cited.

We therefore concur in the learned judge's finding of noninfringement, and accordingly the decree dismissing the bill of complaint is affirmed.